IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | Criminal No.  1:21-cr-00359-DLF |
| | * | |
| **TRAVIS HANEY,** | * | |
| **Defendant.** | * | |

*******

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Travis Haney, by his undersigned counsel, hereby respectfully requests that the Court impose a sentence at or below the low end of the guideline range, which in this case is 30 to 37 months to account for the mitigating and non-aggravating circumstances present in the case. In particular, Mr. Haney's possession of the firearm was not in connection with the commission of any other offenses. His sole prior conviction took place nearly 15 years ago, when he was only 20 years old. While that offense was a serious offense, since that time he has not been convicted or charged with any similar assaultive behavior. Mr. Haney also suffers from mental health issues and lack of parental guidance which have contributed to his conduct. However, Mr. Haney has shown himself amenable to supervision and was diligent in attending rehabilitative services under the supervision of CSOSA. As set out in the attached community treatment plan, Mr. Haney has been conditionally accepted into the Salvation Army's Adult Rehabilitation Center (ARC) program, a six-month long rehabilitative program focusing on recovering from substance abuse. As the program would be available to Mr. Haney upon release from imprisonment, it would serve the purposes of sentencing to allow him to transition to that program as soon as possible. Accordingly, a sentence of 30 months is reasonable, complies with the purposes of sentencing, and is "sufficient, but not greater than necessary" as required by 18 U.S.C. § 3553(a).

I.    **The Sentencing Guidelines**

    A.    **Sentencing Range**

There is no dispute as to the offense level calculation. *See* Plea Agreement at ¶4; PSR at ¶¶ 8-9; 25-35 (offense level calculation); 38-40 (criminal history calculation). With an Total Offense Level 17 and a Criminal History Category III, the sentencing range is 30 to 37 months. PSR ¶84. 15-24.[1]

    B.    **Criminal History**

While there is no dispute that Mr. Haney's Criminal History is III, based on his single 2008 prior conviction, Mr. Haney objects to a number of allegations in the Criminal History portion of the PSR. In particular, the following paragraphs contain information that is inaccurate or that the Court may not consider because they involve unsworn allegations that are in dispute.

**Paragraph 45** should be deleted altogether as it sets out the arrest for the instant offense as if it were "other criminal conduct." That paragraph also fails to state that the warrant issued by the Parole Commission was improperly issued because Mr. Haney was in fact not subject to supervised release, which falls within the purview of the Parole Commission. *See* Case No. 2008-CF3-5789, Order, 10/19/2020.

**Paragraphs 47-48** should also be deleted as they relate to a single event and not two separate incidents and the allegation that Mr. Haney possessed a firearm was unfounded. The event took

---

[1] The base offense level for the offense is 20. *See* U.S.S.G. § 2K2.1(a)(4)(A). A 3-level reduction for acceptance of responsibility applies. The total offense level therefore is 17. He has a single adult conviction resulting a 3-criminal history points. As he was on probation at the time of the instant offense, 2-points are added. This places him in Criminal History Category III.

place while Mr. Haney was on pretrial release in the instant case. At the time, Mr. Haney was released to reside with Ms. Allen. When James Foote, Ms. Allen's former boyfriend entered her house without permission and began to assault her, Mr. Haney came to her defense. Foote, the former boyfriend lied about the situation. Law enforcement personnel who responded to the situation found no firearm. After reviewing "at least 16 body-worn camera videos from MPD officers totaling more than 12 hours of total footage, as well as numerous reports from responding officers and investigators," the Government did not seek to revoke Mr. Haney's pretrial release. Government's Memorandum Regarding the Modification of Defendant's Conditions of Release (ECF 17) at 2-3. Indeed, on June 15, 2021, the United States dismissed the charges in Superior Court. The issue of Mr. Haney's conduct was litigated before this Court, who determined to allow Mr. Haney to continue on pretrial release after finding no basis for the allegation.

Particularly in light of the Government's representations after reviewing the body-worn cameras and witness statements, the Court may not consider the unfounded allegations set out in the PSR at ¶47-48 and should strike them from the PSR. *See, e.g., Shepard v. United States,* 544 U.S. 13 (2005) (police reports cannot form basis of sentencing enhancements; court's consideration of underlying facts "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant").

**Paragraph 51**, which relates to the allegations underlying the 2016 offense, which was reversed because of a *Batson* violation should also be deleted pursuant to *Shepard.*

Mr. Haney objects to the Probation Officer's suggestion that an upward departure in his criminal history may be warranted based on a 2016 conviction that was reversed. *See* PSR ¶109. The Probation Officer incorrectly attributes the reversal to a "procedural error." *Id.* In fact, the conviction was reversed based on a *Batson* violation, which is not a procedural error. *Batson* involves an equal protection violation that strikes at the very heart of the fair trial protections guaranteed by the Sixth Amendment right to an impartial jury of one's peers. *See United States v. Haney*, No. 17-CF-420 (D.C. Court of Appeals).

**2008 Assault Conviction**

While that offense involved quite serious conduct, the Court should take into account that Mr. Haney was not yet 21 when he committed that offense. The Supreme Court has explained the reasons why a person's lack of maturity, susceptibility to negative influences and lessened moral responsibility make conduct of persons who have not yet reached full maturity less morally reprehensible particularly for a young man like Mr. Haney who grew up under such difficult circumstances, poor, without a father to guide him, and suffering from untreated mental health issues.

> First, as any parent knows and as the scientific and sociological studies respondent and his *amici* cite tend to confirm, "[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions." It has been noted that "adolescents are overrepresented statistically in virtually every category of reckless behavior." In recognition of the comparative immaturity and irresponsibility of juveniles, almost every State prohibits those under 18 years of age from voting, serving on juries, or marrying without parental consent.
>
> The second area of difference is that juveniles are more vulnerable or susceptible to negative influences and outside pressures, including

> peer pressure. ("[Y]outh is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage"). This is explained in part by the prevailing circumstance that juveniles have less control, or less experience with control, over their own environment. ("[A]s legal minors, [juveniles] lack the freedom that adults have to extricate themselves from a criminogenic setting").
>
> The third broad difference is that the character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed.
>
> . . . The susceptibility of juveniles to immature and irresponsible behavior means "their irresponsible conduct is not as morally reprehensible as that of an adult." Their own vulnerability and comparative lack of control over their immediate surroundings mean juveniles have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment. The reality that juveniles still struggle to define their identity means it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character. From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed. Indeed, "[t]he relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside."

*Roper v. Simmons,* 543 U.S. 551, 569-570 (2005).

Moreover, Mr. Haney already served a lengthy term of imprisonment for his conduct. The current offense does not involve assaultive conduct. And, since that time, he has not been convicted of similar assaultive conduct.

## II.     Circumstances of The Offense Warrant a Sentence at the Low End

A sentence of 30 months, the low end of the range is warranted in this case. In particular,

while Mr. Haney was in possession of a firearm, there is no indication that he used the firearm in connection with another offense. In a case where the defendant did not use the firearm in connection with another offense, Judge Nichols varied down to a sentence of probation. *See United States v. Fuentez,* 19-cr-0037 (CJN) (granting down variance from range of 41-51 months advisory guideline range to a term of probation).[2]

As set forth below, Mr. Haney's untreated mental health issues also present a mitigating circumstance.

The Probation Officer's mid-range recommendation of 34 months is based on inaccurate information. For one, the Probation Officer states that this is Mr. Haney's "fifth offense involving a firearm." This assessment double counts the instant offense by including ¶45, as one of the five firearm offenses when ¶45 is the arrest that led to the instant charges and counts ¶¶47-48, based on unfounded allegations when no firearm was found by law enforcement at the scene and the witness rejected the assailant's claim that Mr. Haney possessed a firearm. Moreover, the Probation Officer's recommendation does not take into account Mr. Haney's untreated mental health issues and his substantial compliance with CSOSA's rehabilitative services.

### III.  Mr. Haney' History and Characteristics - Mitigating Circumstances

#### A.  Difficult Childhood and Mental Health Issues

Mr. Haney, a 35-year old African American man, was born and raised in southwest DC, in a rough neighborhood where he witnessed a lot of violence and crime. PSR ¶57. He grew up in a

---

[2] As Mr. Haney, Mr. Fuentez was under supervision at the time that he possessed the firearm. In part, Judge Nichols varied downward to allow Fuentez to retain his full-time employment.

household with his mother, two brothers, and one sister. He witnessed domestic abuse by his step-father.

Mr. Haney's mother suffered from heroin abuse and mental health issues, apparently having been diagnosed with bi-polar disorder. *Id*. His mother beat him, when she sought to "discipline" him. His mother passed away in 2022, while Mr. Haney was detained in the instant case. Her death appeared to serve as a trigger for acute psychiatric decompensation that started around late March to early April of 2022, which led to him being arrested when his siblings called for a mental health intervention.[3] On June 23, 2022, pursuant to an evaluation ordered by Superior Court, a clinical psychologist found him to be "incompetent to proceed" to trial and recommended a full competency examination. The evaluation was submitted to this Court at the time. *See also* PSR ¶ 64.

He dropped out of school in 9th grade because of the domestic violence in the family home, lack of guidance and surrounding circumstances in his crime-ridden neighborhood. PSR ¶ 69. His preoccupation with his mother's safety made it difficult for him to focus and pay attention at school. He obtained his GED while detained.

He has a five-year old daughter from a previous relationship. PSR ¶ 58. The child's mother relates that he is a good father to their daughter and they enjoyed co-parenting the child.

---

[3] Mr. Haney has a history of serious mental illness symptoms and opiate addiction as well. He was reportedly treated at the Comprehensive Psychiatric Emergency Program (CPEP) in 2022, shortly after his mother died, because he was agitated, disorganized, delusional, and grandiose, with bizarre behavior. That same month (April 2022), Mr. Haney was also referred to the Community Response Team by his probation personnel because he was reportedly emotionally unstable in the weeks after his mother's death. Mr. Haney was apparently treated with antidepressant, antipsychotic, and sedative medications, as well as a medication to treat narcotic dependence. Records noted that he was diagnosed with a general Psychosis identifier.

The Court can take into account Mr. Haney's difficult childhood, substance abuse and mental health problems in determining the sentence to impose. *See, e.g.* U.S.S.G. § 5H1.3, Mental and Emotional Conditions (relevant to whether a sentence below the range is warranted and "in determining the conditions of probation or supervised release; e.g., participation in a mental health program"). As the D.C. Circuit has explained, such factors may be considered by the Court in varying down from the guideline range. *See United States v. Lopez*, 938 F.2d 1293, 1298 (D.C. Cir. 1991) ("traumatic experiences to which offenders of whatever characteristics might have been exposed . . . do not follow class lines, nor should class lines determine whether a sentencing judge may consider them."). Mr. Haney is remorseful for his conduct and has a strong desire to get help and be rehabilitated. The Court may also consider the effect of incarceration on the well-being of Mr. Haney' minor child. *See Rita v. United States,* 551 U.S. 338, 364-65 (2007) (family ties proper consideration under § 3553(a)); *In Re Sealed Case*, 292 F.3d 913 (D.C. Cir. 2002) (district court may properly consider "defendant's acceptance of responsibility, desire to seek rehabilitation, and family and community ties" in a totality of the circumstances analysis even though Commission considered these factors separately); *United States v. Johnson*, 964 F.2d 124, 128-29 (2d Cir. 1992) (departure warranted based on "need for defendant to provide for and support his family both financially and emotionally"). Moreover, the fact that defendant's own conduct has contributed to her children's difficulties "is obvious and not dispositive" when considering a downward variance based on family circumstances is requested "as the culpability of a defendant who appears for sentencing is a given." *United States v. Schroeder,* 536 F.3d 746, 756 (7th Cir. 2008); *United States v. Johnson*, 964 F.2d 124, 129 (2d Cir.1992) ("The rationale for a downward departure here is not that [the defendant's] family circumstances decrease her culpability, but that we are reluctant to wreak extraordinary

destruction on dependents who rely solely on the defendant for their upbringing.").

### III.  Post-Offense Rehabilitation

In "assessing ... deterrence, protection of the public, and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post-incarceration conduct." *Pepper v. United States*, 562 U.S. 476, 491-92 (2011).  Evidence of post offense rehabilitation is pertinent

> to "the need for the sentence imposed" to serve the general purposes of sentencing set forth in § 3553(a)(2) – in particular, to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training ... or other correctional treatment in the most effective manner." §§ 3553(a)(2)(B)-(D). . . . Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to "impose a sentence sufficient, but not greater than necessary," to comply with the sentencing purposes set forth in § 3553(a)(2).

*Id.*

Post-offense conduct "also sheds light on the likelihood that [a defendant] will engage in future criminal conduct, a central factor that district courts must assess when imposing sentence. *Id.* See §§ 3553(a)(2)(B)-(C).  *See also Gall v. United States,* 552 U.S. 38, 59 (2007) ("Gall's self-motivated rehabilitation ... lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts" (affirming downward variance from a guideline range of 30 to 37 months in a drug offense to a term of probation).

The Court should consider that while on supervision after his release from the 2008 conviction, Mr. Haney successfully completed a number of programs. *See, e.g.,* CSOSA Certificate of Completion; Discharge Summary for Vocational & Employment Services, 1/1/20, attached as Ex.

1 to ECF 29. During the hearing that this Court held on July 12, 2021, Community Supervision Officer Hart indicated that during the period of supervision, Officer Hart had good "rapport" with Mr. Haney (TR 57).[4] Moreover, when conditions were made clear to Mr. Haney he has complied with the conditions of release.

Following his release from the BOP after serving the sentence on his 2008 offense, Mr. Haney immediately reported to CSOSA. Records, 9/3/19 at 49. Thereafter, Mr. Haney either met in person or by phone with a CSOSA Officer regularly through August 17, 2020, completed multiple programs and complied with other conditions of release. *See* CSOSA Records at pp 11-49. In fact, CSOSA records show Mr. Haney's contacts with CSOSA and attendance at various programs almost every other day. Selected examples of his attendance show the following:

- 8/29/2019 released from BOP (Thursday)
- 9/2/2019 Labor Day
- 9/3/2019 reported to CSOSA
- 9/3/2019 complied with Gun Offender Registry
- 9/5/2019 attended the MPD 1st District mass orientation
- 9/12/2019 CSOSA office visit; punctual, "attentive and actively engaged"
- 10/1/2019 CSOSA office visit; "attentive and actively engaged"
- 10/10/2019 CSOSA office visit; "expressed desire to obtain a job"
- 10/10/2019 CSOSA made home visit
- 10/18/2019 Attended Community Engagement & Achievement Center ("CEAC") met CSOSA officer;
- 10/21/2019 participated in the CEAC Decision Points group
- 10/22/2019 participated in the CEAC Journaling
- 10/22/2019 telephone contact with CSOSA
- 12/2/2019 attended Life Skills group
- 1/9/2020 attended information session with Job Developer and shared what types of career interest he would like to pursue; discussed his educational achievements as well as different types of employment documents in his possession.
- 1/14/2020 met with CSOSA officer and wrote resume; printed several jobs openings; practiced interviewing techniques; discussed how to present himself to interviewers.

---

[4] Hearing Tr (7/12/21) at 57.

10

The regular contacts with CSOSA officers and CSOSA related programs continued until he learned in August 2020 that the CSOSA supervision should have been terminated once the conviction for his 2016 case was vacated on April 25, 2019. *See United States v. Haney*, 206 A.3d 854 (D.C. 2019). It is noteworthy with respect to the complexity of the record that Mr. Haney tested at a 7th grade reading level during one of the assessments done by CSOSA. CSOSA records at 134.

### IV.  Post-Incarceration Rehabilitative Plan

Attached to this Memorandum, is a proposed treatment plan, which Mr. Haney would ask the Court to order as a condition of supervised release to provide therapeutic support needed to address Mr. Haney's mental health symptoms, co-occurring substance abuse, and help him move forward successfully. The treatment plan was prepared by Pamela Sheppard, a licensed counselor, who is employed by the Public Defender Services. As Ms. Sheppard writes, Mr. Haney

> has spent the last few years struggling to manage his symptoms related to his mental illness and substance use. Recognizing his need for clinical intervention and support in his recovery, Mr. Haney is eager to engage in comprehensive behavioral health services in the community following his release.

Sheppard Report at 1 (attached as Exhibit 1).

### A.  Salvation Army's Adult Rehabilitation Center ("ARC") Program:

Mr. Haney has been conditionally accepted into the Salvation Army's Adult Rehabilitation Center (ARC) program, which is a six-month long rehabilitative program focusing on recovering from substance abuse. It would begin as soon as he is released from any term of imprisonment that the Court imposes.

> This program is comprehensive, providing Mr. Haney with immediate housing, individual and group counseling, NA and AA meetings up to four times per week, psychosocial groups addressing life skills,

                mindfulness, mandatory employment within the warehouse or store, recreational and fitness facilities, seminars and educational presentations, and supervised community outings. The program also facilitates a transition to supportive or independent housing after completion of the program. This will ensure Mr. Haney has a safe place to reside upon his eventual graduation from the program.

Sheppard Report at 2-3.

## CONCLUSION

As the Supreme Court has noted "a court's duty is always to sentence the defendant as he stands before the court on the day of sentencing." *Pepper*, 562 U.S. 476 at 492. Sentencing Mr. Haney to a term of 30-months imprisonment with a detailed post-offense treatment plan to be implemented through a term of supervised release is reasonable, takes into account the mitigating circumstances, imposes just punishment and protects the public. It complies with the Congressional mandate that a sentence be "sufficient, but not greater than necessary" to promote the purposes of sentencing as required by 18 U.S.C. § 3553(a).

                                                                     Respectfully submitted,

                                                                     /s/ *Carmen D. Hernandez*
                                                                   **Carmen D. Hernandez**
                                                                   MD Trial Bar No. 03366
                                                                   7166 Mink Hollow Rd
                                                                   Highland, MD 20777
                                                                   240-472-3391; 301-854-0076 (fax)

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the instant Memorandum was served on all counsel of record via ECF this 14th day of August, 2023.

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**